**Michael E. JEFFCOAT, a minor, by next friend, Appellant,**

v.

**Dr. John R. PHILLIPS et al., Appellees.**

**No. 1170.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Feb. 18, 1976.

Rehearing Denied March 17, 1976.

John H. Holloway, Houston, for appellant.

F. Walter Conrad, Baker & Botts, Sandra K. Foster, W. N. Arnold, Jr., Fulbright & Jaworski, Howard S. Hoover, Hoover, Cox & Miller, Bass C. Wallace, Andrews, Kurth, Campbell & Jones, Houston, for appellees.

CURTISS BROWN, Chief Justice.

This suit arises out of an appendectomy performed on Michael Jeffcoat on September 25, 1961. The patient (Jeffcoat or appellant) brought suit against Dr. John R. Phillips (Dr. Phillips), Medical Arts Hospital, Inc. (Hospital) and Harris County Medical Society (Society). As against Dr. Phillips, plaintiff alleged lack of informed consent, medical malpractice, and fraud. He asserted that the surgery was unnecessary and that he was left with an excessively large scar on his abdomen. With respect to the Society plaintiff claimed fraud and negligence, particularly with respect to information alleged to have been transmitted to the parents of the patient. The pleading against the Hospital was predicated upon alleged negligence in permitting the doctor

the use of its facilities when it knew or should have known of Doctor Phillips's alleged incompetence.

Interlocutory summary judgments were entered in favor of the Hospital and the Society. As to Dr. Phillips the case was tried on the merits to a jury. Based upon the jury verdict answering all liability and damage issues in favor of the defendant the court granted a final take-nothing judgment in favor of all defendants. Jeffcoat has duly perfected this appeal.

With respect to the summary judgments granted, the requirements which must be met to entitle movants to such summary judgments are well settled. The burden rests on the movants to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827 (Tex.Sup. 1970). Keeping this heavy burden in mind we review the granting of the interlocutory summary judgments on behalf of the Hospital and the Society.

■ With respect to the Society, the mother of Jeffcoat testified (by summary judgment evidence in the form of a deposition) that on May 25, 1960, immediately preceding the operation by Dr. Phillips on her daughter, Patricia, she called the telephone number of the Harris County Medical Society. An unidentified woman answered. When Mrs. Jeffcoat inquired about Dr. Phillips the woman left the phone and came back shortly and told her that "he was one of the finest surgeons in Harris County," that "she would not be afraid of him," that "he had a real good reputation," and that "he didn't have any bad reports against him." No further information from the person answering the phone was imparted to her. The Executive Secretary of the Society at the time of this alleged telephone conversation unequivocally stated in an affidavit in support of the motion that no person employed by the Society at the time was authorized to express an opinion as to the competency or reputation of Dr. Phillips as a physician, or to provide information as to any complaints that may have been made against him. His affidavit further states that, on the contrary, persons answering the phone at the Society had been specifically instructed not to provide such information. Testimony of an interested party will generally not support a summary judgment. This affidavit was from such a party. However, the reasonableness of the statement made would seem to meet the test of *Cochran v. Wool Growers Central Storage Co.,* 140 Tex. 184, 166 S.W.2d 904 (1942). It was not contradicted by any other witness or attendant circumstances, and the same is clear, direct and positive and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon. *Id.* at 908.

■ In any event the Society was entitled to summary judgment on the basis of the undisputed summary judgment evidence without reliance upon the affidavit of the Executive Secretary. Fraud is the misrepresentation of a past or present material fact upon which a plaintiff relies to his detriment. *Gaut v. Quast,* 505 S.W.2d 367 (Tex.Civ.App.—Houston [14th Dist.]), *writ ref'd n. r. e. per curiam,* 510 S.W.2d 90 (Tex.Sup.1974). The Society had the burden of establishing as a matter of law that, as against it, appellant had no cause of action. *Gaddis v. Smith,* 417 S.W.2d 577 (Tex.Sup.1967). To be actionable fraud the misrepresentation complained of must concern a material fact as distinguished from a mere matter of opinion, judgment, probability, or expectation. *Ryan v. Collins,* 496 S.W.2d 205 (Tex.Civ.App.—Tyler 1973, writ ref'd n. r. e.); *Fossier v. Morgan,* 474 S.W.2d 801 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ). The representations testified to by Mrs. Joe Jeffcoat—that Dr. Phillips was "one of the finest surgeons in Harris County," that she "would not be afraid of him," that "he had a real good

reputation," and that "he didn't have any bad reports against him"—are nothing more than matters of opinion, judgment, or expectation. Appellant emphasizes the statement relating to "bad reports." What constitutes a "bad" report is a matter of opinion and judgment.

■ Furthermore, the summary judgment proof establishes non-reliance as a matter of law. The sole contact with the unidentified person answering the phone was made approximately sixteen months before the surgery in question. When directly asked how she had relied on the statement made to her on the telephone Mrs. Jeffcoat replied, "I let Dr. Phillips operate on my daughter." Despite the fact that she was dissatisfied with the incision made by Dr. Phillips on her daughter some sixteen months before the operation in question, she nevertheless permitted him to perform the surgery on her son. This permission was given after she had notice of, and had challenged the necessity for, the long incision on her daughter. Thus the Society showed lack of reliance as a matter of law. Jeffcoat's points of error relating to the Society are overruled.

■ The summary judgment in favor of the Hospital was justified and is affirmed. In general a hospital is liable under respondeat superior for injuries negligently inflicted by an employee of the hospital acting within the course and scope of his employment. *Howle v. Camp Amon Carter,* 470 S.W.2d 629 (Tex.Sup.1971). Secondly, a hospital may be liable for the breach of duties which the institution owes directly. *Medical & Surgical Memorial Hospital v. Cauthorn,* 229 S.W.2d 932 (Tex. Civ.App.-El Paso 1949, writ ref'd n. r. e.). For example, hospitals may be liable for negligence in selecting or retaining an agent or employee. *Sandone v. Dallas Osteopathic Hospital,* 331 S.W.2d 476 (Tex.Civ. App.-Amarillo 1959, writ ref'd n. r. e.); *Steele v. St. Joseph's Hospital,* 60 S.W.2d 1083 (Tex.Civ.App.-Fort Worth 1933, writ ref'd); Annot., 51 A.L.R.3d 981 (1973). A hospital may also be liable for providing defective or ineffective facilities or equipment when its negligence proximately results in injury or death. *See Overton Memorial Hospital v. McGuire,* 518 S.W.2d 528 (Tex.Sup.1975); *Bellaire General Hospital, Inc. v. Campbell,* 510 S.W.2d 94 (Tex.Civ. App.-Houston [14th Dist.] 1974, writ ref'd n. r. e.).

■ The general rule is that a hospital is not liable for injuries resulting from the negligent acts or omissions of independent physicians. No respondeat superior liability attaches where the physician is an independent contractor and not an employee or servant of the hospital. *Newton County Hospital v. Nickolson,* 132 Ga.App. 164, 207 S.E.2d 659 (1974).

Appellant directs our attention to *Penn Tanker Co. v. United States,* 310 F.Supp. 613 (S.D.Tex.1970); *Purcell v. Zimbelman,* 18 Ariz.App. 75, 500 P.2d 335 (1972), and *Joiner v. Mitchell County Hospital Authority,* 125 Ga.App. 1, 186 S.E.2d 307 (1971), aff'd, 229 Ga. 140, 189 S.E.2d 412 (1972), as authority for the proposition that when a hospital knows or should know of the incompetency of an independent-contractor physician using its facilities, then liability on the hospital may attach. In the *Joiner* and *Penn Tanker* cases the physicians were in fact provided by the hospital and not chosen by the patient. Therefore, these cases do not support the proposition asserted. *Purcell* tends to be supportive of appellant's position. However, in that case the evidence established that the American Osteopathic Association had established accreditation requirements which imposed an obligation on the governing authorities of accredited hospitals to screen those who were granted privileges to use the hospital. It was the practice among these hospitals to set up committees to carry out that purpose. In the instant case undisputed summary judgment evidence established that no such requirements were made upon or had been voluntarily entered into by the Hospital.

In addition to the cases cited by appellant, we find that *Darling v. Charleston Community Memorial Hospital,* 50 Ill. App.2d 253, 200 N.E.2d 149 (1964), *aff'd,* 33 Ill.2d 326, 211 N.E.2d 253 (1965), *cert. denied,* 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966), has been cited for the proposition that a hospital may be liable for negligence in granting or continuing surgical privileges where it knows or should know that the particular physician is unqualified or unskilled. Introduced into evidence were the hospital's by-laws, which required consultation and review of staff physicians' work. Furthermore, the status of the doctor is not entirely clear, and *Darling* may be simply a case in which the hospital was held responsible for the negligence of its employee. *See Collins v. Westlake Community Hospital,* 12 Ill.App.3d 847, 299 N.E.2d 326, 328 (1973), *rev'd on other grounds,* 57 Ill.2d 388, 312 N.E.2d 614 (1974).

In any event a doctor of the choice of a patient is still considered by a majority of states to be an "independent contractor" with regard to hospitals at which he has staff privileges. *See* Perdue, *The Law of Texas Medical Malpractice,* 11 Hous.L.Rev. 302, 337 (1974); Annot., 69 A.L.R.2d 305 (1960). The summary judgment record here affirmatively establishes that the Jeffcoats had an on-going doctor-patient relationship with Dr. Phillips entirely aside from the Hospital. Further, they had firsthand knowledge of his performance as a surgeon and the manner in which he performed appendectomies in particular. Nevertheless, they continued to make use of his services and employed him to perform the appendectomy in question sixteen months after a similar operation on their daughter. We adhere to the majority rule and hold that where it is shown that no employer-employee, principal-agent, partnership, or joint venture relationship exists between the hospital and the physician, a hospital is not liable for granting or continuing surgical privileges where the patient has chosen the physician and the hospital is not otherwise liable. On the undisputed record before the court the Hospital was entitled to judgment as a matter of law.

Appellant's pleadings against Dr. Phillips included allegations of malpractice, lack of informed consent, and fraud. He has assigned on appeal many points, including claimed error in the exclusion of the testimony of two medical-expert witnesses, Dr. Reuss and Dr. Bucklin. Dr. Reuss is a general practitioner presently practicing in Houston, Texas. His training consisted of a Medical Degree from the University of Texas Medical School at Galveston, which he received in 1955. He spent his internship and a year of surgical training at Robert B. Green Hospital in San Antonio. He practiced for several years in Cuero, Texas, before moving to Houston in 1963. He testified that he was familiar with the customary practices in Harris County with respect to the standards applicable to appendectomies in 1961. Although a general practitioner, and not a surgeon, Dr. Reuss had performed some 200 appendectomies. He was permitted to state his opinion as to whether the appendectomy in question was necessary and his opinion with respect to the use of the large incision but was not permitted to state his opinion as to the standard of care in Harris County in 1961 as to the diagnosis, treatment and risk advisement.

In *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779, 782 (1949), our supreme court stated:

It is definitely settled with us that a patient has no cause of action against his doctor for malpractice, either in diagnosis or recognized treatment, unless he proves by a doctor of the same school of practice as the defendant: (1) that the diagnosis or treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries.

The rule of *Bowles v. Bourdon* was extended to informed consent cases in *Wilson v. Scott,* 412 S.W.2d 299 (Tex.Sup.1967). It was relaxed in *Porter v. Puryear,* 153 Tex.

82, 262 S.W.2d 933 (1953), *jdgmt. set aside on other grounds,* 153 Tex. 82, 264 S.W.2d 689 (1954), to allow the testimony of non-local doctors where the subject of inquiry was common to and equally recognized and developed in all fields of practice or where the subject of inquiry related to the manner of use of electrical or mechanical appliances or devices in common use in all fields of practice. The so-called "locality" rule requires that the medical proof be from a witness familiar with the practice in the same or similar communities. *Turner v. Stoker,* 289 S.W. 190 (Tex.Civ.App.-Eastland 1926, writ ref'd). This rule has been eroded due to the recognition that in most cases the minimal standards of care have become more homogeneous with the development of modern medical education, training, and literature, and that licensing provisions tend to be strict and uniform. *See Webb v. Jorns,* 488 S.W.2d 407 (Tex.Sup. 1972); *Cleveland v. Edwards,* 494 S.W.2d 578 (Tex.Civ.App.-Houston [14th Dist.] 1973, no writ); *Christian v. Jeter,* 445 S.W.2d 51 (Tex.Civ.App.-Waco 1969, writ ref'd n. r. e.); Annot., 37 A.L.R.3d 420 (1971).

■ The testimony of Dr. Reuss excluded by the court was essential to the plaintiff's case under the principles enunciated in *Bowles v. Bourdon, supra,* and *Wilson v. Scott, supra.* The evidence was admissible. The mere fact that Dr. Reuss did not begin his individual practice in Houston until 1963 did not justify the trial court in excluding his testimony. He received his medical education in Galveston and his training in San Antonio and testified directly that he was familiar with standards relating to diagnosis, treatment and risks advisement for appendectomies in Houston, and that they had been standard for many years. *See Brown v. Colm,* 11 Cal.3d 639, 522 P.2d 688, 114 Cal.Rptr. 128 (1974) (doctor admitted to practice in 1959 could establish a 1949 standard of care). The trial court erred in excluding Dr. Reuss's testimony, and the error was harmful. We, therefore, must reverse the judgment in favor of Dr. Phil-lips and remand the cause for a new trial. Appellant's point of error number eight is sustained.

■ With respect to Dr. Bucklin we hold that, under the circumstances reflected by the record, the trial court had discretion to refuse to receive his evidence as submitted. He should have been permitted to express his opinion that the surgery was unnecessary. However, he was allowed to testify that the removed appendix was normal and that ordinarily competent doctors do not remove normal appendixes. Thus, no reversible error in this regard was shown. Although the trial court could have permitted additional testimony from Dr. Bucklin, reflected by the bill of exceptions, he did not abuse his discretion in declining to admit this evidence.

■ In light of the necessity for another trial insofar as Dr. Phillips is concerned, we will comment briefly on some of appellant's other complaints. Appellant does not present reversible error in complaining of the action of the trial court in quashing the subpoena for "copies of all pathology reports of appendectomies performed by Dr. John Roberts *[sic]* Phillips from September 25, 1959, to date," either for the purpose of direct evidence of other acts of negligence or for purposes of impeachment. *Dallas Ry. & Terminal Co. v. Farnsworth,* 148 Tex. 584, 227 S.W.2d 1017 (1950); *Goodnight v. Phillips,* 458 S.W.2d 196, 199–200 (Tex.Civ.App.-Houston [1st Dist.] 1970, writ ref'd n. r. e.); *French v. Brodsky,* 521 S.W.2d 670 (Tex.Civ.App.-Houston [1st Dist.] 1975, no writ). Appellant's tendered instruction at issue on informed consent was not in substantially correct form and the trial court did not err in refusing such definition. We also overrule appellant's contention that he was entitled to impeach Dr. Phillips by proof of other acts to show a "scheme" to rush patients into surgery. Other courts have overruled such contention, and so do we. *See Goodnight v. Phillips,* 458 S.W.2d 196 (Tex.Civ.App.-Houston [1st Dist.] 1971, writ

ref'd n. r. e.). *See also Goodnight v. Phillips,* 418 S.W.2d 862 (Tex.Civ.App.-Houston [1st Dist.] 1967, writ ref'd n. r. e.); *Jeffcoat v. Phillips,* 417 S.W.2d 903 (Tex.Civ.App.-Texarkana 1967, writ ref'd n. r. e.).

Appellant's other complaints are not likely to occur at the next trial, and thus need not be further considered. The summary judgments in favor of the Harris County Medical Society and the Medical Arts Hospital, Inc. are affirmed. The judgment in favor of Dr. John Robert Phillips is severed and reversed and the cause remanded.

Affirmed in part, and reversed and remanded in part.